## STATE OF CONNECTICUT *v.* KAROL DOMIAN
(15154)

Peters, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued September 26, 1995—decision released January 2, 1996

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Joan K. Alexander,* assistant state's attorney, for the appellee (state).

PALMER, J. The sole issue presented by this certified appeal is whether the guilty plea of the defendant, Karol Domian, was entered knowingly, voluntarily and intelligently, notwithstanding the trial court's failure to inform him of the mandatory minimum sentence. The defendant pleaded guilty to the crime of arson in the first degree,[1] a class A felony punishable by a term of imprisonment of not less than ten nor more than twenty-five years,[2] and was sentenced to a prison term of ten years. The defendant appealed from the judgment of conviction to the Appellate Court claiming that the trial court's failure to inform him of the mandatory minimum sentence violated his federal constitutional right to due process and, therefore, that he was entitled to withdraw his plea and proceed to trial.[3] The Appellate Court concluded that, under the circumstances presented, the defendant had not established a constitutional violation and, accordingly, affirmed the judgment of the trial court. *State* v. *Domian*, 35 Conn. App. 714, 646 A.2d 940 (1994). We granted the defendant's petition for certification,[4] and now affirm the judgment of the Appellate Court.

[1] General Statutes § 53a-111 provides in relevant part: "Arson in the first degree: Class A felony. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[2] General Statutes § 53a-35a provides in relevant part: "Imprisonment for any felony committed on or after July 1, 1981: Definite sentences; terms authorized. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years . . . ."

[3] The defendant also raised several other claims on appeal to the Appellate Court, none of which is the subject of this appeal.

[4] We granted the defendant's petition for certification limited to the following question: "Whether the Appellate Court was correct in concluding

The facts relevant to this appeal are set forth in the opinion of the Appellate Court. "On November 9, 1992, the defendant was arrested and charged with arson in the third degree in violation of General Statutes § 53a-113,[5] and false statement in violation of General Statutes [Rev. to 1991] § 53a-157.[6] The arson charge arose from a fire on February 28, 1992, at 132 Gold Street in New Britain. The subject premises, an abandoned three-family dwelling, had been an arson target in 1991. As of February 28, 1992, the building was boarded up and scheduled for demolition. On November 9, 1992, in an unrelated matter, the defendant was also charged with conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48[7] and 53a-103.[8] On December 1, 1992, the defendant was arrested in another unrelated matter and charged with burglary in the third degree in violation of General Statutes § 53a-103, larceny in the second degree in violation of General

that the defendant's plea to arson in the first degree was entered knowingly, intelligently and voluntarily when he was not informed of the mandatory minimum sentence?" *State* v. *Domian*, 231 Conn. 941, 653 A.2d 824 (1994).

[5] General Statutes § 53a-113 provides in relevant part: "Arson in the third degree: Class C felony. (a) A person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or of another by intentionally starting a fire or causing an explosion."

[6] General Statutes (Rev. to 1991) § 53a-157, now codified at § 53a-157b, provides in relevant part: "False statement: Class A misdemeanor. (a) A person is guilty of false statement when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function."

[7] General Statutes § 53a-48 provides in relevant part: "Conspiracy. . . . (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[8] General Statutes § 53a-103 provides in relevant part: "Burglary in the third degree: Class D felony. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Statutes § 53a-123,[9] and conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48 and 53a-123. On March 9, 1993, the state filed a substitute information, raising the charge of arson in the third degree to arson in the first degree in violation of [General Statutes] § 53a-111.

"On May 13, 1993, the defendant pleaded guilty, pursuant to [*North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], to arson in the first degree, burglary in the third degree and larceny in the second degree. The state entered a nolle prosequi of the remaining charges. . . .

"During the plea canvass in this case, the trial court first ascertained that the defendant was not under the influence of drugs, alcohol or medication, and that the defendant had had enough time to talk to his attorney about the case and the decision to plead guilty. The court next informed the defendant of the elements of each of the three charges to which he was pleading guilty, and of the maximum sentence that could be imposed for each charge. The court then enumerated the rights that the defendant was giving up by his decision to plead guilty. After ensuring that no one had forced or threatened the defendant to plead guilty, the trial court told the defendant that the state would be 'recommending substantial incarceration' and that the court was planning to impose a sentence of ten years. The trial court explained to the defendant: '[Y]our lawyer will have the right to argue for less than [ten years], but I've told him not to be optimistic; it would take a miracle for me to give you less than ten years.'[10] After

---

[9] General Statutes § 53a-123 provides in relevant part: "Larceny in the second degree: Class C felony. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

[10] The exchange between the trial court and the defendant proceeded in relevant part as follows:

"The Court: Now as I understand it the state's going to be recommending

the defendant consistently acknowledged that he understood what the court planned to do, the state's attorney described the allegations supporting the charges. Then after asking the defendant, the defendant's attorney, the state's attorney, and the defendant's mother if there were any questions or problems, the trial court accepted the defendant's plea as knowing and voluntary, and found the plea to be supported by a factual basis." *State* v. *Domian*, supra, 35 Conn. App. 715–22.

On September 14, 1993, following a presentence investigation, the trial court, *Damiani, J.*, sentenced the defendant to concurrent sentences of ten years on the arson charge and five years each on the burglary and larceny charges. The defendant appealed from the judgment of conviction claiming, inter alia, that his guilty plea to the charge of arson in the first degree was not knowingly and voluntarily made. The Appellate Court affirmed the judgment of the trial court, concluding that the court's "failure to inform the defendant of the mandatory minimum [sentence] does not render the plea unknowing or involuntary. In light of the detailed explanation of the sentence the trial court planned to impose, we cannot reasonably find that the defendant had any realistic expectation of getting less than a ten

substantial incarceration for you. I've indicated to your lawyer and to the state that I'd be imposing a sentence of ten years. Do you understand that, sir?

"The Defendant: Yes, sir.

"The Court: Now, your lawyer will have the right to argue for less than that, but I've told him not to be optimistic; it would take a miracle for me to give you less than ten years. You understand that, sir?

"The Defendant: Yes, I do, sir.

"The Court: Once I accept your plea today you'll come back for sentencing . . . . On June 18 you'll be here for sentencing. You can't withdraw your plea except with my permission. And the only way that would happen would be if I were to impose more than ten years. You understand that?

"The Defendant: Yes, I do sir.

"The Court: If I gave you ten years you're locked in, you can't take your plea back. You understand that?

"The Defendant: Yes, I do, sir."

year sentence, despite the bargained for opportunity to argue for less than ten years. We are unpersuaded that the defendant would have changed his plea if informed of the mandatory minimum sentence of ten years, part of which could have been suspended." Id., 722. We agree with the conclusion of the Appellate Court and, therefore, affirm its judgment.

The defendant did not move to withdraw his guilty plea prior to sentencing, electing instead to raise the issue of the defective plea canvass for the first time on appeal. Accordingly, he seeks review of the trial court's failure to apprise him of the mandatory minimum sentence under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or, in the alternative, as plain error under Practice Book § 4185.[11] We conclude that the defendant is not entitled to relief either under *Golding* or under the plain error doctrine.

In *State* v. *Golding*, supra, 213 Conn. 239–40, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) As the Appellate Court held and the state concedes, the first two prongs of *Golding* are met here. We proceed, then, to a consideration of whether, under the third prong, the alleged

---

[11] Practice Book § 4185 provides in relevant part: "Errors Considered

"The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

constitutional violation clearly exists and clearly deprived the defendant of a fair trial.[12]

"A guilty plea is itself a conviction; *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Paulsen* v. *Manson*, 203 Conn. 484, 489, 525 A.2d 1315 (1987); and a defendant, when entering such a plea, waives several constitutional rights. *Boykin* v. *Alabama*, supra, 243; *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Paulsen* v. *Manson*, supra [489]; *State* v. *Gilnite*, [202 Conn. 369, 381, 521 A.2d 547 (1987)]. First is the privilege against self-incrimination, second is the right to a jury trial, and third is the right to confront one's accusers. *Boykin* v. *Alabama*, supra [234]; *McCarthy* v. *United States*, supra [466]; *State* v. *Gilnite*, supra, 381 n.14. To ensure that a defendant is accorded due process, [therefore] the plea must be voluntarily and intelligently entered. *Boykin* v. *Alabama*, supra, 243 n.5; *McCarthy* v. *United States*, supra [466]; *Paulsen* v. *Manson*, supra [489]; *Oppel* v. *Lopes*, 200 Conn. 553, 556, 512 A.2d 888 (1986); *State* v. *Badgett*, [200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 473, 93 L. Ed. 2d 373 (1986)]; *State* v. *Lopez*, 197 Conn. 337, 341–42, 497 A.2d 390 (1985)." *State* v. *Wright*, 207 Conn. 276, 287, 542 A.2d 299 (1988).

Because it cannot be presumed from a silent record that the decision to plead guilty was the product of the defendant's "full understanding of what the plea connotes and of its consequences"; *Boykin* v. *Alabama*,

---

[12] The defendant contends that the trial court's failure to inform him of the mandatory minimum sentence violated his right to due process under both the Connecticut and United States constitutions. He did not, however, raise a state constitutional claim in the Appellate Court. Moreover, he does not claim that he is entitled to any greater due process protection under the state constitution than he is under the federal constitution. For purposes of this appeal, therefore, we assume, without deciding, that the defendant's right to be fully informed of the circumstances bearing on his decision to plead guilty is the same under the state and federal constitutions.

supra, 395 U.S. 243–44; "the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights [implicated by the guilty plea]." *State* v. *Badgett*, supra, 200 Conn. 418. To ensure that this constitutional requirement is satisfied, the trial court is obliged to comply with the dictates of Practice Book §§ 711 and 712,[13] which enumerate the responsibilities of the court in conducting the plea canvass. However, because the "determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances"; *State* v. *Wright*, supra, 207 Conn. 287; the plea may satisfy constitutional requirements even in the absence of "literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712." *State* v. *Badgett*, supra, 418. Thus, although the trial court never expressly informed the defendant of the mandatory minimum sentence for arson in the first degree as required by Practice

---

[13] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

Practice Book § 712 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his counsel."

Book § 711 (2), that fact alone is not dispositive of the defendant's constitutional claim. We must determine, instead, whether, in light of all of the circumstances evident from the record before us, the trial court's failure to inform the defendant of the statutorily required minimum sentence rendered his guilty plea unknowing or involuntary. See *State* v. *Wright*, supra, 287–88.

Our inquiry, therefore, must focus upon the effect, if any, that the trial court's noncompliance with Practice Book § 711 (2) had on the defendant's ability to make a fully informed and voluntary plea decision. Thus, the ultimate issue to be resolved is " 'whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a [guilty] plea.' " *Hunter* v. *Fogg*, 616 F.2d 55, 58 (2d Cir. 1980), quoting *Caputo* v. *Henderson*, 541 F.2d 979, 984 (2d Cir. 1976); *Coleman* v. *Commissioner of Correction*, United States District Court for the district of Connecticut, Docket No. 2:91-CV0005 (December 30, 1991), aff'd, 969 F.2d 1041 (2d Cir. 1992); *State* v. *Dennis*, 30 Conn. App. 416, 424–25, 621 A.2d 292, cert. denied, 226 Conn. 901, 625 A.2d 1376 (1993); see also *D'Amico* v. *Manson*, 193 Conn. 144, 154, 476 A.2d 543 (1984) ("plaintiff's misapprehension as to his exposure in respect to the minimum term of his indeterminate sentence, even if proved, would [not] constitute such a significant deficit in his otherwise full comprehension of the consequences of his guilty plea as to invalidate it unless the deficiency would have changed his decision to plead guilty").[14] We conclude that, although the defendant may not have been aware of the mandatory minimum sentence for

---

[14] We note that, with the exception of *State* v. *Dennis*, supra, 30 Conn. App. 416, each of these cases was decided in the context of a claim for habeas corpus relief. We see no reason, however, to apply a different test in this direct appeal.

arson in the first degree,[15] there is nothing in the record of the trial court proceedings to suggest that the defendant was unaware of the actual sentencing possibilities and, further, that even if his understanding of the possible sentencing alternatives was less than perfect, the record does not support a claim that any additional information would have made a difference in his decision to plead guilty.[16]

The sole deficiency alleged by the defendant is that the trial court failed to inform him of the mandatory minimum sentence. Literally speaking, the record supports this contention, because at no time during the plea canvass did the trial court apprise the defendant of the mandatory minimum sentence for the crime of arson in the first degree. The trial court did make it very clear, however, that it intended to impose a ten year sentence *and* that the possibility of a lesser sentence was so remote as to be virtually nonexistent. Furthermore, although the trial court was statutorily prohibited from imposing a prison term of less than ten years, the court was free, in the exercise of its discretion, to suspend some or all of the sentence. See *State* v. *Hanson*, 210 Conn. 519, 525, 556 A.2d 1007 (1989); *State* v. *O'Neill*, 200 Conn. 268, 289, 511 A.2d 321 (1986). Although we again underscore the importance of full compliance with the requirements of Practice Book § 711, the constitutional mandate is not strict adherence to the rule but, rather, an understanding by the defendant of the "actual sentencing possibilities." *Hunter* v. *Fogg*, supra, 616 F.2d 58. On the facts before us, we are

---

[15] Because the trial court record does not affirmatively establish that the defendant was aware of the mandatory minimum sentence, we assume, for purposes of this appeal, that he was not.

[16] Although we have previously rejected due process challenges to the validity of a guilty plea when the trial court has failed to apprise the defendant of the mandatory minimum sentence; see *State* v. *Collins*, 207 Conn. 590, 596–97, 542 A.2d 1131 (1988); *State* v. *Wright*, supra, 207 Conn. 285–89; we did not apply the test that we adopt today.

unable to find a constitutionally significant distinction between the trial court's statement that "it would take a miracle" for the defendant to receive a sentence of less than ten years, on the one hand, and, on the other, an advisement of the mandatory minimum sentence in strict compliance with Practice Book § 711 (2).

The defendant also maintains that his guilty plea was not knowingly entered because his bargained-for right to argue for a sentence of less than ten years—which he asserts, and we assume, constituted an important part his plea agreement—was meaningless in light of the ten year mandatory minimum prison term. This claim might well have merit if the mandatory minimum sentence could not be suspended. Because the trial court retained the discretion to fashion a suspended sentence, however, the defendant's right to argue for a sentence requiring him to serve less than ten years in prison was in no sense illusory. Indeed, the trial court's comments at the sentencing hearing indicate that it seriously considered, and ultimately rejected, the defendant's request for leniency.[17]

Moreover, because the trial court could have suspended some or all of the mandatory minimum ten year term of imprisonment, there is no reason to believe that a plea canvass in complete conformity with Practice Book § 711 (2) "would have made any difference in [the defendant's] decision to enter a [guilty] plea." *Hunter*

[17] At the sentencing hearing, the defendant implored the court to suspend a portion of the sentence due to his troubled personal history, which he established through the testimony of friends and relatives. The trial court was not unmoved by the testimony, stating as follows: "I'd like to be lenient to you, based upon your prior history, your background, or your lack of prior criminal history and your background involving the atrocities you saw in Poland, the abusive behavior of your father to you." Ultimately, however, the court decided not to suspend the ten year term of imprisonment, concluding that the defendant had "[held] the key to . . . a more lenient sentence" but, "instead of using that key," the defendant had failed to cooperate meaningfully with the authorities upon his arrest.

v. *Fogg*, supra, 616 F.2d 58. We may fairly assume that a principal reason why the defendant decided to plead guilty was to limit his prison exposure to ten years, a term far less than he would have faced if he had been convicted of the charges after a trial.[18] See *State* v. *Collins*, 207 Conn. 590, 598, 542 A.2d 1131 (1988) (reasonable to infer that dominant consideration in plea negotiation resulting in agreed-upon sentence of 17 year prison term was defendant's exposure to consecutive sentences totaling 122 years). In addition, we may also presume that the defendant was well aware of the trial court's authority to suspend some or all of any sentence imposed. See *State* v. *Hanson*, supra, 210 Conn. 525; *State* v. *O'Neill*, supra, 200 Conn. 289; see also footnote 17.

Our conclusion is fully consistent with *Coleman* v. *Commissioner of Correction*, supra, Docket No. 2:91-CV0005, upon which the defendant relies. In *Coleman*, the petitioner had entered into a plea agreement with the state pursuant to which he was to be sentenced to a prison term of thirty-five years. At the plea canvass, Coleman was advised by the trial court that he faced a mandatory minimum sentence of thirty years if convicted on all counts when, in fact, he was actually exposed to a mandatory minimum prison term of only five years. After receiving the agreed upon thirty-five year sentence, Coleman appealed, claiming that his misapprehension of the mandatory minimum sentence had rendered his plea constitutionally infirm. The Appellate Court affirmed his conviction; *State* v. *Coleman*, 17 Conn. App. 307, 552 A.2d 442 (1989); and the defendant brought a habeas corpus action in the United States District Court, which, after a hearing, granted Cole-

---

[18] The defendant could have received prison terms on the arson, larceny and burglary charges of up to twenty-five, ten and five years, respectively. In addition, the state, as part of the plea agreement, entered a nolle prosequi of the other charges that were pending against the defendant.

man's petition. The District Court, applying the test enunciated in *Hunter* v. *Fogg*, supra, 616 F.2d 58, concluded, first, that Coleman had harbored a mistaken belief as to the actual sentencing possibilities, and second, that he would not have entered into the plea agreement had he been properly apprised of the mandatory minimum sentence.[19] The conclusion reached by the District Court in *Coleman* is in all respects consistent with the determination we reach today; the outcome differs only because the defendant, in contrast to Coleman, has failed to show either that he was materially misled as to the actual sentencing possibilities or that he would not have entered into the plea agreement had he been expressly informed of the mandatory minimum sentence.[20]

Having failed to establish that his guilty plea was not entered voluntarily or intelligently, the defendant is unable to demonstrate a constitutional violation entitling him to relief under *Golding*. The defendant's plain error claim must fail for the same reason. "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. . . . Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks

---

[19] The unreported decision of the United States District Court was affirmed by the Second Circuit Court of Appeals. *Coleman* v. *Commissioner of Correction*, 969 F.2d 1041 (2d Cir. 1992).

[20] We do not, of course, foreclose the defendant from bringing a habeas corpus action in which he may seek to establish that he would not have entered his guilty plea had he been apprised of the mandatory minimum sentence. Although we are extremely dubious that the defendant could prevail in any such action for the reasons already enumerated, our review of his claim on direct appeal is necessarily limited to the record, which, for example, contains no explanation by the defendant as to how he was prejudiced by the trial court's technical noncompliance with Practice Book § 711 (2).

omitted.) *State* v. *Wright*, supra, 207 Conn. 288–89. Because the defendant has made no showing that the entry of his guilty plea was the product of any impropriety, he cannot prevail under the plain error doctrine.

The judgment is affirmed.

In this opinion the other justices concurred.