[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 16, 1997, pursuant to a plea agreement, Fitzroy Jackson, hereinafter the petitioner, entered a guilty plea to one count of sale of a controlled substance in violation of Connecticut General Statutes CT Page 13197 § 21a-277(b) and admitted to a charge of Violation of Probation in violation of Connecticut General Statutes § 53a-32. The agreement was for a "cap" of three years with the reservation of a right to argue for less. On September 29, 1997, the petitioner was sentenced on both counts to a total effective sentence of 33 months to serve. He did not appeal. He filed this habeas petition pro se on April 2, 1998, while incarcerated. Amended petitions were filed April 14, 2000, April 24, 2000 and May 15, 2000. The May 15, 2000, amended petition alleges in Count One a due process claim based upon an involuntary plea and in Count Two a due process claim based upon the deprivation of the right to appeal. The hearing was held on May 17, 2000 in the Windham judicial district. No special defenses are claimed. The petitioner is no longer incarcerated.
From the testimony it heard, the exhibits, and the complete court file it has reviewed, the court makes the following findings of fact.
The petitioner is a 39-year-old Jamaican citizen. On February 27, 1997, while on probation for a prior drug conviction in 1996, he was arrested on two counts of sale of controlled substance (§ 21a-277(b)) and one count of possession of less than four ounces of marijuana (§21a-279(c)). He was presented March 13, 1997 in GA2 in Bridgeport. He entered pleas of not guilty on March 27, 1997 and his case was placed on the pretrial list. On May 28, 1997 Attorney Mark Warren appeared on his behalf replacing a former private attorney. On June 24, 1997 the petitioner was presented again in GA2 on a charge of violation of probation (§ 53a-32) and entered a denial. This charge referred to his prior conviction on June 13, 1996 and his subsequent sentence to three years suspended, three years probation in September of 1996.
On July 16, 1997 the petitioner appeared before Judge Kaplan. His criminal case appeared on the pretrial docket and his probation case on the violation of probation docket. A disposition was reported to Judge Kaplan by the Assistant State's Attorney, Michael J. Bove, Jr. The following conversation ensued:
 MR. BOVE: He's going to admit to the violation of probation, plea to one count of sale of marijuana for a cap of three years, right to argue for less and a PSI.
THE COURT: PSI? I thought we had an agreed rec?
MR. BOVE: This is just a straight cap and —
MR. WARREN: Yes, with a right to argue. That's what we talked about. CT Page 13198
THE COURT: What does he owe on probation.
MR. WARREN: Three.
MR. BOVE: Three.
 THE COURT: All right, three years is the cap. There's no question just so everyone understands, there is going to be some period of incarceration. It's not an absolute walk.
MR. WARREN: We understand that, Your Honor.
THE COURT: I mean, you know.
MR. WARREN: We understand that.
 THE COURT: Okay. As long as — I don't want the Defendant walking out with a false hope that he's not going to serve some time. He is going to serve some time. The question is how much.
MR. WARREN: Right.
THE COURT: Okay?
MR. WARREN: We understand that, Your Honor.
 THE COURT: Okay. I just don't want him walking out and coming back and saying, hey, you told me I can get a totally suspended sentence. The question is how close or how far away from three years is he going to be sentenced.
MR. WARREN: Exactly, exactly.
 THE COURT: Okay, prior pleas and elections are withdrawn. Put him to plea.
 MR. BOVE: Mr. Jackson, in 1270000, you are charged with Sale of Marijuana on February 27th, 1997 in violation of 21a-277(b). How do you plead, guilty or not guilty?
MR. JACKSON: Guilty. CT Page 13199
 MR. BOVE: And in the other file, a Violation of Probation in 117726. Do you admit or deny a violation of your probation?
MR. JACKSON: (No verbal response.)
 THE COURT: You are charged with violation of probation, sir. Is that admitted or denied?
MR. JACKSON: I admit it.
THE COURT: Okay.
 MR. BOVE: Basically, Your Honor, he was placed on probation on September 3rd, 1996 by Your Honor. Sentenced to three years suspended, three years probation with an AIC plan recommended. Special conditions:
1. Possess no narcotics or drugs.
2. Do not violate any law of the United States.
 On February 27th, 1997 he was arrested by the Bridgeport Police Department and charged with sell (sic) of marijuana. According to the Bridgeport Police report, they did a drug investigation at 500 Park Avenue, a shopping plaza. Surveillance began at 7:45 and concluded around 8:10 with the arrest of one seller who was later identified as Mr. Fitzroy Jackson. At 7:45 p.m. they observed Mr. Jackson loitering in front of a restaurant. Also observed a Spanish man approaching Jackson. After a brief conversation took place, Jackson and the Hispanic male walked to the northeast corner of the plaza by a large green dumpster. Jackson reached up on the dumpster and removed a brown box where he removed a small item. He handed the item to the Hispanic male who in returned (sic) handed paper cash currency to Jackson. At this time a black male approached Jackson and there was another transaction.
 Those were essentially the facts. When they moved in the (sic) were able to obtain, get the stash that was in the garbage dumpster which contained a hundred and CT Page 13200 ninety six grams or seven ounces of green plant like material. Those essentially were the facts.
During the canvass that followed Judge Kaplan advised the petitioner relative to the maximum penalty for both charges and further advised him regarding waiving his various rights.
 Q The maximum penalty is up to ten years in jail, the three years you owe on the violation and ten years that you could get on the sell (sic) of marijuana. Do you understand that?
A Yes, Your Honor.
 Q But the recommendation is three years with the right of your attorney to argue for a lesser sentence than three years. But you understand that there is going to be a period of incarceration and your attorney can argue for less than three years, but if you appear the most you can get is three years? Do you understand that?
A Yes, Your Honor.
 Q Now if you fail to appear, you've violated the conditions of the plea bargain and the most you can get is the ten years, okay, that you could have been sentenced to. It's only if you appear that it's three years as a cap. Do you understand that?
A Yes, sir.
 Q Do you have any other — other than this probation, are you on any other probation or parole?
A No, Your Honor.
Q Do you have any other cases pending in this court or any other court —
A No, Your Honor.
Q — under this name or any other name?
A No, Your Honor. CT Page 13201
 Q You understand that when you plead guilty and admit a violation of probation you give up certain rights. You give up the right to remain silent, the right to cross examine the State's witnesses and call your own witnesses. With regard to the violation of probation, you give up the right to deny the violation, have a hearing and at that hearing have the State show you are in violation by a fair preponderance of the evidence. With regard to the criminal offense, you give up the right to plead not guilty, have a trial and at that trial have the State prove you guilty beyond a reasonable doubt. Do you understand you give up all those rights?
A Yes, Your Honor.
Q Has anyone threatened you or forced you to plead guilty?
A No, Your Honor.
Q You are doing it freely and voluntarily?
A Yes, Your Honor.
 Q You understand one of the conditions of this plea negotiation is that this matter will be continued for sentencing — until what? August 15th?
MR. BOVE: September.
 Q — until September 15th at ten o'clock and that if you appear for sentencing on that date it's three years with the right of your attorney to argue for a lesser sentence. If you don't appear, you can get anywhere up to ten years. Do you understand that?
A Yes, Your Honor.
 Q You understand that if you are not a U.S. citizen your plea could result in your deportation, exclusion from the U.S. or denial of naturalization, citizenship? You understand that?
A Yes, Your Honor. CT Page 13202
 Q You heard the facts as stated by the State's attorney. Are they substantially correct? Is that what happened?
A Yes, Your Honor.
 THE COURT: Counsel, do you know of any reason why the plea or admission should not be accepted?
MR. WARREN: No, Your Honor.
THE COURT: State know of any reason?
MR. BOVE: No, Your Honor.
THE COURT: Counsel, does your client waive a PSI?
MR. WARREN: Yes.
THE COURT: Does the State waive a PSI?
MR. DOVE: Yes, Your Honor.
 THE COURT: Very well. The Court will find that the plea and admission are knowingly and voluntarily made with the assistance of competent counsel, there is a factual basis for the plea and admission, the plea and admission are accepted. A finding of guilty a finding of probation may be entered. September 15th on the K Docket at ten o'clock.
MR. WARREN: Thank you, Your Honor.
On September 29, 1997 the petitioner was sentenced within the parameters of the plea agreement to concurrent terms of thirty-three (33) months on each count. No appeal from this proceeding was filed nor was a motion to withdraw the pleas filed prior to sentencing.
Count One of the petitioner's amended petition alleges that his plea was involuntary and obtained without due process for several reasons. First, he claims he did not validly waive his constitutional right to a jury trial on the charge of sale of a controlled substance. Second, he allegedly did not validly waive his constitutional right to the assistance of counsel. Third, he says the trial court did not advise him concerning the actual maximum sentence as required by Connecticut Practice Book § 39-19(4). Fourth, the trial court allegedly CT Page 13203 improperly found a factual basis for the plea in contravention of Connecticut Practice Book § 39-21.
Count Two of the petitioner's amended petition alleges that he was denied due process because he was not advised at his sentencing of his right to appeal.
Regarding the petitioner's first claim in Count One, i.e., that he did not validly waive his right to a jury trial, the court recognizes that a defendant who enters a guilty plea waives three fundamental federal constitutional rights: the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. Boykinv. Alabama, 395 U.S. 238, 243 (1969). The same rights are guaranteed by the Connecticut constitution, article first, § 8 as amended by Amendment XVII. State v. Suggs, 194 Conn. 223, 227 n. 3 (1984). For an accused to validly waive any of these rights under the Due Process Clause, the waiver must be "an intentional relinquishment or abandonment of a known right or privilege." Boykin, 395 U.S. at 243 n. 3 (quotingMcCarthy v. United States, 394 U.S. 459, 466 (1969) and Johnson v.Zerbst, 304 U.S. 458, 464 (1938)). "Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. UnitedStates, 394 U.S. 459, 466 (1969).
Moreover, waiver of any of these fundamental constitutional rights cannot be presumed from a silent record. Boykin, 395 U.S. at 242. For that reason, Connecticut Practice Book § 711 (now § 39-19) "was promulgated to ensure that such guilty pleas are made voluntarily and with fall knowledge of the waiver of constitutional rights." Suggs,194 Conn. at 226. Strict compliance with Practice Book § 39-19(5), which addresses the fundamental rights referred to in Boykin and Suggs, is not necessary, however, as long as the court's inquiry is "constitutionally sufficient under the circumstances of th[e] case." State v. Badgett,200 Conn. 412, 419, cert. denied, 479 U.S. 940, 107 S.Ct. 423
(1986).
In Badgett the Supreme Court determined that a trial court's failure to use the term "jury trial" does not, standing alone, render a plea involuntary. The Court reasoned that Badgett must have been advised of his right to a jury trial because he elected a jury trial at the time of his initial plea. Through counsel, Badgett informed the trial court that he wished to withdraw prior pleas and elections. The Supreme Court determined that the trial court's response that "`the prior pleas and elections are withdrawn and vacated' clearly refer[red] to the defendant's withdrawal of his election for a jury trial." Id. The Court concluded that, "[a]lthough Boykin requires that relinquishment of the right to a trial by jury must be evident and cannot be presumed from a CT Page 13204 `silent' record, we conclude that the trial court's express mention of waiver of the right to trial, combined with the defendant's prior election for a jury trial, his experience with criminal proceedings and apparently adequate representation by counsel, satisfy the constitutional requirement." Badgett, 200 Conn. at 419-420.
In the present case, the petitioner was first presented on March 13, 1997. Presumably, the advisement of rights at that time, pursuant to Connecticut Practice Book § 37-3, included notice of his right to a trial by judge or jury on the three counts, although not specifically required therein. When he entered pleas of not guilty on March 27, 1997, he must have been advised of his right to a trial by either the court or a jury because his case was placed on a jury pretrial list where it appeared on July 16, 1997. Further, Connecticut Practice Book § 37-9
[previously § 645] reads, in part: "[a]ny defendant who pleads not guilty shall be asked whether he or she desires a trial either by the court or jury." The petitioner claimed at his hearing of May 17, 2000, that he had never been informed of his right to a jury trial by the court or by either of his two attorneys. The court does not accept these claims as credible. By his own admission he made at least six court appearances with his lawyers relative to the criminal charges before being arrested on the charge of violation of probation on June 24, 1997.
When he changed his prior pleas of not guilty on July 16, 1997 and entered a guilty plea to one count of violating § 21a-277b, he was informed only that he was giving up his right to a trial, and not specifically, a jury trial, as was the case in Badgett. As in Badgett, the court noted that prior pleas and elections were withdrawn.
Here, as in Badgett, 200 Conn. at 419-20, this court finds that the trial court's express mention of a waiver of the right to "trial," and the trial court's recital that prior pleas and elections were withdrawn, when combined with the petitioner's prior election for a jury trial and his experience with criminal proceedings, i.e., his arrest and subsequent felony conviction in 1996 satisfy the constitutional requirement that his plea was entered on a voluntary basis.
The petitioner next claims his plea was involuntary because at the time of the plea canvass on July 16, 1997, he was not told that by his guilty plea, he was waiving the right to the assistance of counsel at trial.
Connecticut Practice Book § 39-19(5) requires that a defendant be advised that he has the right to the assistance of counsel. The plea canvass of July 16, 1997 did not include this advice. The defendant did not raise this issue prior to his sentencing nor did he appeal on this basis. Without reciting again the three core constitutional issues in CT Page 13205Boykin v. Alabama, 395 U.S. at 243-244, the court notes that the right to the assistance of counsel is not one of them. Further, the Connecticut Supreme Court has held that Connecticut Practice Book § 39-19
requires only substantial compliance. See State v. Domian, 235 Conn. 679,689 (1996). The test is whether, in light of all circumstances, the trial court's failure to comply rendered the guilty plea unknowing or involuntary. State v. Badgett, 200 Conn. at 418. Stated another way, the test is whether accurate information would have made any difference in the defendant's decision to enter a guilty plea. State v. Domain,235 Conn. at 688.
On these facts there is substantial compliance with Connecticut Practice Book § 39-19. The defendant appeared several times in the court prior to his plea. He was represented by counsel on each occasion. He was told of his right to a trial. The petitioner already had counsel with whom he had had several discussions prior to entering his plea and admission on July 16, 1997. In his testimony on May 16, 2000, he did not claim that he was unaware of his right to the assistance of counsel. Clearly his plea was unaffected by the absence of this advice. There is no merit to this claim of the petitioner.
The petitioner next claims that he was improperly advised concerning the maximum possible sentence at the time of the plea canvass on July 16, 1997. He claims that the trial court did not substantially comply with Connecticut Practice Book § 39-19(4) when it advised the petitioner, "the maximum penalty is up to ten years in jail, the three years you owe on the violation and ten years that you could get on the sell [sic] of marijuana." § 39-19(4) requires, in relevant part, that
 "(t)he judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) (t)he maximum possible sentence on the charge, including, if there are several charges, the maximum possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment maybe authorized by reason of a previous conviction. . . ."
The defendant did not raise this issue prior to sentencing nor did he appeal on this basis.
Once again it is clear that the three core constitutional issues inBoykin v. Alabama, 395 U.S. at 245-244 are not implicated here. Only substantial compliance with Connecticut Practice Book § 39-19 is CT Page 13206 required. State v. Domain, 235 Conn. at 689.
General Statutes § 21a-277(b) provides that for a first offense a defendant can be sentenced to no more than seven years, and for each subsequent offense no more than fifteen years. While the petitioner argues that he could have received a maximum consecutive sentence of eighteen years as a second offender, the information and the evidence do not establish that the petitioner was subject to an enhanced sentence as a second offender. Connecticut Practice Book § 39-23 mandates that to be charged as a second offender that the information contain a second part. Since he was simply charged with the sale, and not as a second offender, the trial court was substantially correct in advising him that the maximum penalty was ten years, although it misstated the breakdown of the sentence as 10 years on the sale of controlled substance charge and three years on the charge of violation of probation.
The petitioner also claims that the facts recited by the Assistant State's Attorney at the plea canvass of July 16, 1997 include no support for a finding that the defendant sold a controlled substance, and that without such a factual basis in the record, the trial court could not have correctly found that his plea was entered knowingly and voluntarily on the criminal charge.
Attorney Bove, the Assistant State's Attorney, gave a report to the court on July 16, 1997, that also appears on page 4 herein, after the petitioner had entered a guilty plea to the charge of sale of marijuana:
 On February 27th, 1997 he was arrested by the Bridgeport Police Department and charged with the sell (sic) of marijuana. According to the Bridgeport Police report, they did a drug investigation at 500 Park Avenue, a shopping plaza. Surveillance began at 7:45 and concluded around 8:10 with the arrest of one seller who was later identified as Mr. Fitzroy Jackson. At 7:45 p.m. they observed a Spanish man approaching Jackson. After a brief conversation took place, Jackson and the Hispanic male walked to the northeast corner of the plaza by a large green dumpster. Jackson reached up on the dumpster and removed a brown box where he removed a small item, He handed the item to the Hispanic male who in returned (sic) handed paper cash currency to Jackson. At this time a black male approached Jackson and there was another transaction.
 Those were essentially the facts. When they moved in CT Page 13207 the (sic) were able to obtain, get the stash that was in the garbage dumpster which contained a hundred and ninety-six grams or seven ounces of green plant like material. Those were essentially the facts.
Connecticut Practice Book § 39-21 requires that "(t)he judicial authority shall not accept a plea of guilty unless it is satisfied that there is a factual basis for the plea." The defendant did not seek to withdraw his plea prior to sentencing nor did he raise this issue on appeal. There may be no constitutional duty to establish a factual basis for a guilty plea; see State v. Niblack, 220 Conn. 270, 281 (1991), where there is no notice of the need for such an inquiry. In this case, however, the record does provide a factual basis to the court for the plea to the criminal charge.
First, the Assistant State's Attorney informed the petitioner that he was entering a plea to the charge of sale of marijuana. Next, the prosecutor described an exchange by the petitioner with another of an item from a box at the top of a dumpster in return for cash. Minutes later the petitioner was arrested and found in the dumpster was seven ounces of green plant like material. After this recital by the prosecutor the court asked the petitioner if his attorney had explained the elements of the offense of sale of marijuana to him and the petitioner responded affirmatively.
Later in the canvass the following exchange, also found on page 6 herein, took place in the presence of the petitioner, counsel and the court:
 Q You understand that if you are not a U.S. citizen your plea could result in your deportation, exclusion from the U.S. or denial of naturalization, citizenship? You understand that?
A Yes, Your Honor.
 Q You heard the facts as stated by the State's attorney. Are they substantially correct? Is that what happened?
A Yes, Your Honor.
 THE COURT: Counsel, do you know of any reason why the plea or admission should not be accepted?
MR. WARREN: No, Your Honor. CT Page 13208
THE COURT: State know of any reason?
MR. BOVE: No, Your Honor.
THE COURT: Counsel, does your client waive a PSI?
MR. WARREN: Yes.
THE COURT: Does the State waive a PSI?
MR. BOVE: Yes, Your Honor.
 THE COURT: Very well. The Court will find that the plea and admission are knowingly and voluntarily made with the assistance of competent counsel, there is a factual basis for the plea and admission, the plea and admission are accepted. A finding of guilty a finding of probation may be entered. September 15th on the K Docket at ten o'clock.
MR. WARREN: Thank you, Your Honor.
From the above colloquy it is clear that the petitioner had no quarrel with the facts recited by the Assistant State's Attorney. The court proceeded to find a factual basis for the plea and the canvass ended.
The facts recited by the prosecutor were clear to all and described in very plain language the elements of the offense of sale of marijuana, which was described as green plant like material. The petitioner and his attorney were satisfied as was the court when it found a factual basis for the plea. There is no merit to this claim.
The petitioner's claim in Count Two is that he was denied due process because he was not advised of his right to appeal. The record is silent on this issue but in view of existing case law it is not likely that the clerk of the court would provide this notice in view of the petitioner's plea. Connecticut Practice Book § 43-30 only requires such noticeafter trial. (Emphasis supplied.)
The Connecticut Supreme Court has held that there is no due process requirement that a trial court inform a defendant of his or her right to appeal after a guilty plea. Amato v. Warden, 168 Conn. 254, 260 (1975). Accordingly, this claim is without merit.
For the reasons recited herein, the petition is dismissed. CT Page 13209
Potter, J.