STATE OF CONNECTICUT *v.* JOSE LUGO
(AC 19698)

Landau, Spear and Mihalakos, Js.

Argued November 27, 2000—officially released February 20, 2001

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret Kelley*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jose Lugo, appeals from the judgment of conviction rendered following his guilty

plea under the *Alford* doctrine[1] to the crimes of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a),[2] possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statues § 21a-278a (b)[3] and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1).[4] The defendant claims that

[1] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant pleading under the *Alford* doctrine . . . acknowledges that the state has evidence sufficient to obtain a conviction and therefore chooses to plead guilty in order to avoid the imposition of a possibly more serious punishment after trial." (Internal quotation marks omitted.) *State* v. *Bowden,* 53 Conn. App. 243, 245 n.1, 729 A.2d 795 (1999).

[2] General Statutes § 21a-277 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[3] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . . For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

[4] General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ."

the trial court improperly accepted his guilty plea because the court failed to inform him of (1) the maximum sentence that could be imposed for each individual charge and (2) the nature of the charges to which he pleaded guilty. He claims that these omissions violated Practice Book § 39-19[5] and his constitutional right to due process because he did not knowingly and voluntarily plead guilty. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On October 1, 1997, in a public housing project, a police officer observed the defendant participating in two transactions that appeared to involve the sale of narcotics. The defendant walked away as police officers approached, and, as he retreated from them, he dropped a white, cylindrical container. Soon thereafter, the police officers arrested the defendant and found $110 in his wallet. A police officer also retrieved the white, cylindrical container, which contained forty-two folds of heroin.

On the second day of trial, defense counsel informed the court that the defendant wanted to plead guilty under the *Alford* doctrine, rather than to proceed with the trial. When counsel informed the court that the

[5] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

defendant wanted to plead guilty, counsel emphasized that the defendant was aware of the fact that there was no sentencing arrangement or recommendation in exchange for the plea.

To determine whether the defendant's plea was voluntary, the court asked the defendant several questions during the plea canvass. In summary, the court asked the defendant if his attorney had reviewed with him the elements of the crimes with which he was charged, as well as the minimum and maximum penalty the court could impose in connection with the charges. The defendant replied, "Yes, Your Honor."[6] Later in the canvass, the court also addressed defense counsel and

---

[6] The following relevant colloquy took place between the court and the defendant:

"[The Court]: And has your attorney reviewed with you the elements of the crimes you were charged with as well as the minimum and maximum penalty the court can impose in connection with the charges against you?

"[The Defendant]: Yes, Your Honor.

"[The Court]: And, do you understand that there is a maximum exposure of twenty-three years?

"[The Defendant]: Yes, Your Honor.

"[The Court]: And do you understand that with respect to your plea to possession of narcotics with intent to sell within one thousand five hundred feet of a public housing project that the conviction of that is three years which is mandatory which shall run consecutive to any sentence the court imposes with respect to your plea in connection with possession of narcotics with intent to sell? Do you understand that?

"[The Defendant]: Um—no.

"[Defense Counsel]: Your Honor, if I may.

(Aside between defense counsel and the defendant.)

"[Defense Counsel]: He understands, Your Honor.

"[The Court]: Do you understand, sir, that three years consecutive will be imposed and that shall not be suspended in any way and it shall be in addition to and consecutive to any term of imprisonment the court imposes in connection with your guilty plea with respect to the charge of possession of narcotics with intent to sell? Are you clear about that?

"[The Defendant]: Yes, Your Honor.

"[The Court]: And, counselor, are you satisfied that your client understands the explanation of the elements of the crimes he is charged with as well as the penalties?

"[Defense Counsel]: Yes, Your Honor."

inquired whether he was satisfied that the defendant understood the explanation of the elements of the crimes and the penalties. Defense counsel replied, "Yes, Your Honor."

The court specifically asked the defendant if he understood that he faced a maximum sentence of twenty-three years, and the defendant replied, "Yes, Your Honor." Then, the court asked the defendant if he understood that there was a three year mandatory sentence for the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project, a charge that would run consecutively to any sentence imposed. At first, the defendant replied, "Um—no." Counsel interrupted at that point and took the defendant aside. After their discussion, defense counsel stated, "He understands, Your Honor." The court again addressed the defendant, emphasizing that a three year consecutive sentence would be imposed and that the sentence would not be suspended in any way, but would be in addition to and consecutive to any term of imprisonment that the court imposed in connection with the guilty plea. In response to the court's query whether he understood, the defendant stated, "Yes, Your Honor."

The court accepted the defendant's plea. Thereafter, the court imposed a total effective sentence of eighteen years for the three counts.[7] This appeal followed.

Because he did not attempt to withdraw his plea prior to sentencing, the defendant concedes that he did not preserve his claims for appellate review. Accordingly, he requests that we review his claims under the doctrine

[7] The court sentenced the defendant to a term of twelve years on the count of possession of narcotics with intent to sell, three years mandatory on the count of possession of narcotics with intent to sell within 1500 feet of a public housing project and three years on the count of failure to appear in the first degree. The court further ordered that counts two and three run consecutively to count one and to each other for a total effective sentence of eighteen years.

enunciated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 578–79, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

Here, the record is adequate for review, and the defendant's claims are of constitutional magnitude. Nevertheless, the defendant's claims must fail because no constitutional violations exist that deprived him of a fair trial.

To ensure that guilty pleas are entered knowingly, voluntarily and intelligently, Practice Book § 39-19 requires that prior to accepting a guilty plea the court shall inform the defendant of "[t]he nature of the charge to which the plea is offered" and "[t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A

plea of guilty cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . These principles are in accord with Practice Book § 711 (1) et seq. [now § 39-19]." (Citations omitted; internal quotation marks omitted.) *State* v. *Wideman*, 38 Conn. App. 581, 585, 663 A.2d 409, cert. denied, 235 Conn. 907, 665 A.2d 906 (1995). We are bound by our Supreme Court's decision in *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), in which the court held that "[t]o the extent that the defendant's claim implicates the failure of the trial court to apprise him of the constitutionally mandated requirements for a valid plea . . . his claim is properly reviewable despite the absence of a timely motion to withdraw the plea. . . . While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of . . . three core constitutional rights [enunciated in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] . . . *it does not require that the trial court go beyond these constitutional minima.* . . . A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19[8] and 39-20[9]]. Therefore . . . *precise compliance with the provisions [of the Practice Book] is not constitutionally required.* [The court's analysis, therefore, should] focus on whether the federal constitutional principles . . . were satisfied rather than on meticulous compliance with the provisions of the Practice Book." (Emphasis in original; internal quotation marks omitted.) *State* v. *Williams*, supra, 60

---

[8] See footnote 5.

[9] Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty . . . without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. . . ."

Conn. App. 579–80; see also *State* v. *Domian,* 235 Conn. 679, 686–87, 668 A.2d 1333 (1996).

To prevail, the defendant must establish that the court failed to obtain a proper waiver of at least one of the three core constitutional rights identified in *Boykin,* thereby depriving him of due process. See *State* v. *Williams,* supra, 60 Conn. App. 581. "[T]o discern whether the defendant's claims are sufficient to satisfy the third prong of the *Golding* test, we must determine whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a [guilty] plea." (Internal quotation marks omitted.) *State* v. *Peterson,* 51 Conn. App. 645, 656–57, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999); see also *State* v. *Domian,* supra, 235 Conn. 688.

I

The defendant first claims that his guilty plea was not entered knowingly and voluntarily because the court failed to inform him of the maximum sentence for each individual charge in violation of his constitutional right to due process. We do not agree.

The defendant failed to cite any authority to support this assertion, and we are not aware of any. The court was not required to apprise him of more than the constitutional minima established in *Boykin* and *Badgett.* *State* v. *Williams,* supra, 60 Conn. App. 579–80; see also *State* v. *Domian,* supra, 235 Conn. 686–87. The court satisfied this requirement when it informed the defendant of the three core constitutional rights, namely, his rights to be free of compulsory self-incrimination, to a jury trial and to confront his accusers.

Even if this court were to assume, arguendo, that the defendant had a constitutional right to know the maximum sentence for each individual charge, nothing

in the record shows that such knowledge would have affected his decision to plead guilty. See *State* v. *Peterson*, supra, 51 Conn. App. 656–57. The colloquy between the court and the defendant reveals that the court informed the defendant that there was a twenty-three year maximum sentence for his charges, and the defendant stated that he understood.[10] The colloquy sufficiently demonstrates that the defendant understood the law and the effect on his rights of pleading guilty. Accordingly, we conclude that the defendant made his guilty plea knowingly and voluntarily, and that the court's acceptance of his plea did not violate his constitutional right to due process.

## II

The defendant's second claim is that he did not enter his guilty plea knowingly and voluntarily because the court failed to inform him of the nature of the charges to which he pleaded guilty in violation of Practice Book § 39-19 and his due process rights. This claim is without merit.

"The United States Supreme Court has stated that where a trial court does not inform a defendant during a plea proceeding about the elements of the crime charged, 'even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.' " *State* v. *Williams*, supra, 60 Conn. App. 581–82, quoting *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). Here, the court did not inform the defendant of the elements of the crimes charged. We may presume, however, that defense counsel explained the elements to the defendant prior to advising him to plead guilty. We conclude that the defendant's second claim fails to

---

[10] See footnote 6.

satisfy the third prong of *Golding* because the defendant did not overcome the presumption that he understood the nature of the offense. The relevant colloquy reveals that the court inquired of the defendant and defense counsel as to whether the defendant understood the elements of the crime, and each replied affirmatively.[11]

The defendant argues that he did not understand the mandatory, minimum sentence for the conviction of possession of narcotics with intent to sell within 1500 feet of a housing project, and, therefore, the court could rely on neither his representation nor defense counsel's representation that he fully understood the elements of the charges.[12] We are unpersuaded.

After the court allowed counsel to explain the mandatory, minimum sentence to the defendant and after counsel stated that the defendant understood, the court addressed the defendant. The court reiterated and emphasized to the defendant that there was a mandatory, minimum sentence. The defendant stated that he understood.[13] Accordingly, the defendant failed to establish that a constitutional violation clearly existed and deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.