STATE OF CONNECTICUT *v.* CARMELO T.[1]
(AC 28238)

Flynn, C. J., and DiPentima and Pellegrino, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued April 16—officially released September 30, 2008

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Raheem L. Mullins*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Maxine V. Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Carmelo T., appeals from the trial court's judgments of conviction, which were rendered following the denial of his motion, filed pursuant to Practice Book § 39-27, to withdraw his guilty pleas to two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2)[2] and two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A). On appeal, the defendant claims that the court abused its discretion in denying his motion because his pleas were made unknowingly and involuntarily. In support of that claim, the defendant asserts that (1) he did not understand the nature of the charges to which the pleas were offered, (2) the court's plea canvass failed to comply substantially with Practice Book §§ 39-19 and 39-20, and (3) his plea counsel provided ineffective assistance.

---

[2] We note that the conduct that gave rise to the risk of injury charges allegedly occurred between April, 1998, and December, 2002. Although General Statutes § 53-21 was amended during that time, there is no dispute that the conduct in which the defendant allegedly had engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21 as the revision of the statute under which the defendant was charged.

We disagree and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The defendant initially was charged in two separate matters, both involving claims of sexual misconduct with two different minor children on various dates between April, 1998, and 2002. In both cases, the defendant was charged with (1) sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), (2) sexual assault in the third degree in violation of § 53a-72a (a) (1) (A), (3) risk of injury to a child in violation of § 53-21 (a) (1), (4) risk of injury to a child in violation of § 53-21 (a) (2) and (5) unlawful restraint in violation of General Statutes § 53a-95 (a). The cases subsequently were consolidated.

In March, 2006, the state offered the defendant a plea agreement that called for him to plead guilty to two counts each of risk of injury to a child and third degree sexual assault and to receive fifteen years incarceration, suspended after seven years, and fifteen years of probation. The defendant accepted the plea agreement, conditioned on his being able to plead under the *Alford* doctrine,[3] which was agreeable with the state. On March 27, 2006, the court canvassed the defendant regarding his *Alford* pleas and accepted the pleas after concluding that he was submitting his pleas knowingly, intelligently and voluntarily.

On May 26, 2006, prior to sentencing, the defendant made an oral motion to withdraw his guilty pleas on the grounds that the court had conducted an inadequate canvass and that he had received ineffective assistance

---

[3] *"North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), holds that a criminal defendant need not admit his guilt, but may consent to being punished as if he is guilty to avoid the risk of proceeding at trial." *State* v. *Sutton,* 95 Conn. App. 139, 140 n.1, 895 A.2d 805, cert. denied, 278 Conn. 920, 901 A.2d 45 (2006).

of counsel. The defendant also made an oral motion to dismiss his plea counsel, Miguel Rodriguez. The court granted the defendant's motion to dismiss Rodriguez, appointed new counsel to represent the defendant and continued the matter with respect to the withdrawal of his guilty pleas. The defendant thereafter on August 11, 2006, filed a written motion to withdraw his guilty pleas, alleging that he was entitled to withdraw his pleas pursuant to Practice Book §§ 39-27 (1), (2) and (4).[4] Specifically, he alleged that the plea canvass did not substantially comply with Practice Book §§ 39-19[5] and 39-20,[6] thereby rendering his pleas involuntary, and that the pleas were the result of ineffective assistance of counsel.

On September 8, 2006, the court, relying on the transcript of the plea canvass, concluded that the defendant's pleas were entered knowingly, intelligently and

---

[4] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

[5] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered . . .

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."

[6] Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty . . . without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

voluntarily. Accordingly, the court denied the defendant's motion to withdraw his pleas on the ground of an inadequate plea canvass. The court thereafter held an evidentiary hearing on the defendant's motion on the ground of ineffective assistance of counsel. After taking evidence on the matter, the court concluded that Rodriguez had provided effective assistance and that the defendant's pleas were entered knowingly, intelligently and voluntarily. The court subsequently denied the defendant's motion to withdraw his pleas on the ground of ineffective assistance of counsel.

On September 22, 2006, the court sentenced the defendant in accordance with the plea agreement to fifteen years in prison, execution suspended after seven years, and fifteen years probation. This appeal followed. Additional facts will be provided as necessary.

As a preliminary matter, we identify the legal principles and the standard of review germane to our discussion. "[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State v. Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006).

"Before a guilty plea is accepted a defendant may withdraw it as a matter of right. Practice Book [§ 39-26]. After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [Practice Book § 39-27]. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]." (Citation omitted; internal quotation marks omitted.) *State* v. *Barnwell*, 102 Conn. App. 255, 258–59, 925 A.2d 1106 (2007). "Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Internal quotation marks omitted.) *State* v. *Gundel*, 56 Conn. App. 805, 812, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000). With the foregoing in mind, we now turn to the defendant's specific claims.

I

The defendant first claims that the court abused its discretion in denying his motion to withdraw his pleas under Practice Book § 39-27 (2) because the pleas were involuntary. Specifically, the defendant alleges that he did not understand the nature of the charges to which the pleas were offered, thereby rendering the pleas involuntary. We disagree.

The following additional facts are relevant to the defendant's claim. At the March 27, 2006 plea canvass, the court informed the defendant that the plea agreement called for him to plead guilty under the *Alford* doctrine to two counts of risk of injury to a child and two counts of sexual assault in the third degree and to receive a sentence of fifteen years incarceration,

suspended after seven years, and fifteen years probation. The court then explained that if he chose not to plead guilty, he would go to trial on two counts of sexual assault in the first degree, rather than the two counts of sexual assault in the third degree to which he was pleading guilty. The court explained the possible consequences of being found guilty of sexual assault in the first degree, including a maximum of twenty-five years incarceration with a minimum ten years to serve and a $10,000 fine on each count. The defendant thereafter stated that he wanted to plead guilty to sexual assault in the third degree, rather than proceed to trial on the charges of sexual assault in the first degree. The court then explained the elements of sexual assault in the third degree, and the defendant pleaded guilty under the *Alford* doctrine.

On appeal, the defendant argues that he was confused about the degree of sexual assault to which he was pleading. Specifically, he asserts that the court's interjection of sexual assault in the first degree into the plea canvass led him to believe he was pleading guilty to two counts of that charge, rather than two counts of sexual assault in the third degree. We are not persuaded.

"[I]t is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process. . . . In determining whether the defendant had real notice of the charge against him, however, [a] court must consider the totality of the circumstances surrounding the entry of a plea." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, supra, 277 Conn. 782.

In the present case, we conclude that the totality of the circumstances surrounding the defendant's pleas

clearly indicate that the defendant understood that he was pleading guilty to sexual assault in the third degree, rather than sexual assault in the first degree, and that his claim simply is the result of his critical dissection and artificial isolation of portions of the plea transcript. Although it is true that the court explained to the defendant the charges he faced if he rejected the plea agreement, the court also thoroughly explained during its canvass the elements of sexual assault in the third degree. On each count, the court then asked the defendant if he pleaded guilty or not guilty to the charge of sexual assault in the third degree.[7] The defendant responded, "[g]uilty," to each. Moreover, after the defendant pleaded guilty, the court reviewed with him the events that had just transpired and stated that he had pleaded guilty to sexual assault in the third degree. Similarly, both informations under which the defendant pleaded listed the charges as sexual assault in the third degree in violation of § 53a-72a (a) (1) (A). In reviewing the totality of the circumstances surrounding the entry of the defendant's pleas, we conclude that the record reflects that the court properly canvassed the defendant on the charges to which he actually pleaded and that he failed to express any confusion about what degree of sexual assault he was pleading to at the time the pleas were entered. Accordingly, this claim fails.

II

The defendant's second claim is that the court abused its discretion in denying his motion to withdraw his

---

[7] In canvassing the defendant on one file, the court stated: "To the charge of sexual assault in the third degree, General Statutes § 53a-72a (a) (1) (A), do you plead guilty or not guilty? That's forcing someone else to have sexual contact, touching by force, guilty or not guilty?" The defendant responded, "[g]uilty."

In canvassing the defendant on the other file, the court stated: "And then the charge of sexual assault in the third degree, guilty or not guilty." Again, the defendant responded, "[g]uilty."

pleas under Practice Book § 39-27 (1) because his pleas were not knowing, intelligent and voluntary due to a defective plea canvass. Specifically, he alleges that the court failed to comply with Practice Book § 39-19 (4) by failing to inform him of the possible maximum sentences on the individual charges he faced. We are not persuaded.

Pursuant to Practice Book § 39-27 (1), the trial court is required to permit the withdrawal of a plea of guilty if the plea was accepted without substantial compliance with Practice Book § 39-19. See also *State* v. *James*, 197 Conn. 358, 361, 497 A.2d 402 (1985). Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) [t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."

Our Supreme Court has stated: "Practice Book § [39-19 (4)] is an express recognition [t]hat the defendant's awareness of the maximum sentence possible is an *essential* factor in determining whether to plead guilty . . . . The length of time a defendant may have to spend in prison is *clearly crucial* to a decision of whether or not to plead guilty. . . . Accordingly, Practice Book § [39-19 (4)] *require*[*s*] that the court determine that the defendant fully understands those consequences." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *James*, supra, 197 Conn. 363.

In *State* v. *James*, supra, 197 Conn. 361–66, our Supreme Court concluded that when determining whether there has been substantial compliance with

Practice Book § 39-19 (4), we must conduct a two part inquiry. Our first inquiry is to determine whether the court accepted the defendant's pleas without first determining whether he was aware of and understood the maximum possible sentence to which he was exposed. Id., 364. Next, if we conclude that the court failed to determine whether the defendant was aware of and understood the maximum possible sentence, we examine the record to determine whether, despite the court's failure, he nevertheless had actual knowledge of the maximum possible consequences of his pleas. See id.; see also *State* v. *Bowden*, 53 Conn. App. 243, 247–52, 729 A.2d 795 (1999). If either prong is satisfied, the pleas were accepted with substantial compliance with Practice Book § 39-19 (4).

The defendant entered *Alford* pleas to multiple charges. When a defendant enters pleas to multiple charges, the plea canvass must ensure that he understands both the maximum possible sentence for each individual charge and the maximum possible sentence from consecutive sentences. Practice Book § 39-19 (4). In discharging its obligations under Practice Book § 39-19, however, the court's inquiry "need not be so restricted that the [j]udge [must] mount the bench with a script in his hand"; (internal quotation marks omitted) *State* v. *James*, supra, 197 Conn. 363; although many problems would be avoided if the court used "not a script . . . but . . . some sort of checklist, as a prompter, so that whatever form the dialogue takes, all of the necessary lines will be delivered." (Internal quotation marks omitted.) Id., 363–64.

Our review of the record reveals that the court fulfilled only one of its two obligations under Practice Book § 39-19 (4). Although the court informed the defendant of the maximum possible sentence from consecutive sentences, it clearly failed to inform the defendant of the maximum possible sentence for each

individual charge. Although the court need not follow a script to comply with Practice Book § 39-19, it cannot simply omit necessary lines. By doing so in this case, the court accepted the defendant's pleas without first determining whether he was aware of and understood the maximum possible sentence to which he was exposed for each charge.

Having concluded that the court failed to inform the defendant of the maximum possible sentence on each charge, we next examine the record to determine whether the defendant nevertheless had actual knowledge of the maximum possible consequences of his pleas. Our review of the record reveals that the defendant did, in fact, have actual knowledge of the maximum possible sentence on each individual charge.

The following facts support our conclusion. On September 8, 2006, the court held a hearing on the defendant's motion to withdraw his guilty pleas.[8] Rodriguez testified that prior to the plea bargain, the defendant was facing charges of sexual assault in the first degree. Rodriguez explained to the defendant his exposure under those charges and that the charges were being reduced as a result of the plea bargain. Rodriguez also told the defendant on more than three occasions what the plea offer entailed and what he could expect if he was to plead guilty. Moreover, Rodriguez communicated to the defendant the advantage of the plea agreement in terms of the reduced sentence versus taking the case to trial. Rodriguez also testified that

---

[8] We note that the court denied the defendant's motion to withdraw his pleas on the ground of a defective plea canvass prior to holding an evidentiary hearing on the defendant's motion to withdraw his pleas on the ground of ineffective assistance of counsel. The court, therefore, did not rely on the testimony of Rodriguez and the defendant in reaching its conclusion that its plea canvass was proper. Neither party, however, has argued that we may not rely on that testimony in reviewing the propriety of the defendant's pleas. Because that testimony is part of the record before us, we conclude that we may properly rely on it in reaching our judgment.

he spoke Spanish and always communicated with the defendant in that language.

The defendant thereafter offered his testimony. He first testified that he did not know how much jail time he faced had he gone to trial but then testified that he remembered the judge telling him the maximum penalties he could receive if convicted at trial. The defendant subsequently testified that he entered his guilty pleas after the judge told him the maximum penalties that he could receive.

There seems to be little question that in reaching his decision to enter *Alford* pleas, the defendant had actual knowledge of the maximum possible sentence to which he was exposed, both for the individual charges against him and for consecutive sentences. It is apparent from our review of the record that Rodriguez, in advising the defendant of the advantages of the plea agreement, informed him of the maximum possible sentence to which each individual charge exposed him. The court then apprised the defendant of the maximum possible sentence from consecutive sentences.[9] The defendant, therefore, was well aware of the maximum possible sentence to which each individual charge exposed him in addition to the maximum possible sentence from consecutive sentences pursuant to Practice Book § 39-19. See id., 364.[10] Accordingly, the court's plea canvass

---

[9] The court also, on multiple occasions, informed the defendant that by pleading guilty he was avoiding a trial in which he could have received a "more severe penalty" or been convicted of "more serious offenses."

[10] We note that in *James*, our Supreme Court concluded that there was not substantial compliance with the rules of practice because the trial court failed to address Practice Book § 711 (4), now § 39-19 (4), at all. See p. 566 of the dissenting opinion. Such is not the case here. The record in this case reveals that the court addressed a portion of § 39-19 (4) when it canvassed the defendant regarding the maximum possible consecutive sentence. This, coupled with the defendant's knowledge of the maximum possible individual sentence for each charge, which he gained when Rodriguez advised him of all the salient facts of the charges against him and the consequences of his pleas, satisfied the substantial compliance requirement for § 39-19.

substantially complied with Practice Book § 39-19, and the court did not abuse its discretion in denying the defendant's motion to withdraw his pleas.

### III

The defendant's third claim is that the court abused its discretion in denying his motion to withdraw his guilty pleas pursuant to Practice Book § 39-27 (2) because his pleas were involuntary. Specifically, the defendant claims that his pleas were involuntary because the court (1) failed to determine whether his pleas resulted from prior discussions between the prosecuting authority and the defendant or his counsel pursuant to Practice Book § 39-20, and (2) improperly used force and duress to induce him to accept the pleas.[11] In light of all of the circumstances of the plea canvass, we are not persuaded.

### A

In *State* v. *Ocasio*, 253 Conn. 375, 751 A.2d 825 (2000) (per curiam), our Supreme Court explained that "only substantial, rather than literal, compliance with [Practice Book] § 39-20 is required in order to validate a defendant's plea of guilty." The test for substantial compliance with Practice Book § 39-20 "is whether, in light of all of the circumstances, the trial court's literal compliance with [Practice Book] § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." Id., 380.

Reviewing the record, including the transcript of the evidentiary hearing on the defendant's motion to withdraw his pleas, we can ascertain nothing that suggests that the defendant would have responded negatively if asked whether his guilty pleas were a result of negotiations between the prosecutor and the defendant or his attorney. The record reveals that the court thoroughly

[11] See footnote 6.

canvassed the defendant, and he specifically admitted that his pleas were voluntary[12] and that he wanted the court to accept them. Moreover, Rodriguez informed the defendant of his negotiations with the state regarding a plea offer and the ultimate terms of the state's offer once made. We simply are not persuaded by the defendant's argument that his plea agreement was not the result of negotiations between himself and the prosecutor and his attorney.

In light of the record in this case, we conclude that the court's literal compliance with Practice Book § 39-20 would not have made any difference in the defendant's decision to enter his guilty pleas or in the court's determination that he voluntarily entered pleas of guilty. We further conclude that the court's plea canvass substantially complied with Practice Book § 39-20, and, having substantially complied with the rules of practice, the court did not abuse its discretion in denying the defendant's motion to withdraw his pleas.

### B

Similarly, we are not persuaded that the court used force and duress to induce the defendant to accept the pleas. The defendant's argument is that the court twice stated that if the defendant chose to plead not guilty, they would "start picking the jury this coming Monday." The defendant characterizes these statements as coercive and claims that they pressured him into accepting the pleas. We conclude, however, that the court's statements were not coercive in nature but, rather, accurately informed the defendant of the time line of his trial should he choose not to plead guilty.

---

[12] The court actually asked the defendant if anyone had forced or threatened him to plead guilty. As we explained in *State* v. *Nelson*, 67 Conn. App. 168, 175, 786 A.2d 1171 (2001), however, "[when] the trial court's question that establishes this fact [of voluntariness] was shaped to elicit a negative response . . . [t]he difference is in style and not substance. Both queries established that the pleas were entered voluntarily and without force."

Moreover, the defendant's response to the plea canvass belies his claim that he was forced to plead guilty. The record discloses that after the court made the allegedly coercive statements, the defendant stated to the court that he had not been forced or threatened to plead guilty. "It is well established that [a] trial court may properly rely on . . . the responses of the [defendant] at the time [she] responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *State* v. *Monk*, 88 Conn. App. 543, 552, 869 A.2d 1281 (2005). Accordingly, this claim fails.

## IV

The defendant's final claim is that the court abused its discretion in denying his motion to withdraw his pleas because the pleas resulted from the denial of effective assistance of counsel. Practice Book § 39-27 (4). We disagree.

"Our case law holds that [a] claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 [(4)] of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . In addressing this second prong, the United States Supreme Court held in *Hill* v. *Lockhart*, 474 U.S. 52, [59] 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), that to satisfy the prejudice

requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The resolution of this inquiry will largely depend on the likely success of any new defenses or trial tactics that would have been available but for counsel's ineffective assistance." (Citations omitted; internal quotation marks omitted.) *State* v. *Scales*, 82 Conn. App. 126, 129–30, 842 A.2d 1158, cert. denied, 269 Conn. 902, 851 A.2d 305 (2004). "A reviewing court can find against the [defendant] on whichever ground is easier." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 259, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001).

A

The defendant first claims that Rodriguez provided ineffective assistance by failing to conduct an adequate pretrial investigation.[13] The defendant claims that had Rodriguez conducted an adequate investigation, the allegations of the victim would have proven to be false and that potential defenses would have been exposed. We disagree.

Regarding the defendant's claim, the court found that Rodriguez had advised the defendant of the salient facts of the case and otherwise provided effective representation. To the extent that the court did not make certain

---

[13] To the extent that the defendant claims that counsel was ineffective for failing effectively and timely to share discovery material with him, we summarily dispose of this claim. Rodriguez testified at the evidentiary hearing that he shared material with the defendant. As it was entitled to do, the court plainly credited this testimony. "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The [trial] judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007).

findings concerning the adequacy of Rodriguez' investigation, the plaintiff sought no articulation of the court's ruling. See Practice Book § 66-5. "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002).

Moreover, even if we were to conclude that Rodriguez' investigation was faulty, the defendant failed to make any proffer to the court that he was prejudiced by counsel's alleged dereliction. See *State* v. *Gay*, 108 Conn. App. 211, 219, 947 A.2d 428 (2008). The defendant provided no evidence at the evidentiary hearing that additional investigation would have provided any basis for his claim of innocence. Furthermore, although the defendant claimed that Rodriguez' failure to question directly the victim's family members prejudiced the case, the defendant did not bring the victim's family members forward as witnesses, he provided no reason for their absence and no effort was made to present their evidence through other means. See id. Thus, the court was left with no basis for determining that further investigation would have been of any assistance to the defendant. In the absence of any evidentiary support, the defendant's bare assertion that further investigation was pivotal to his decision to plead guilty does not establish prejudice. See *Williams* v. *Commissioner of Correction*, 90 Conn. App. 431, 437, 876 A.2d 1281 (2005). Accordingly, the defendant has failed to sustain his burden of proof.

B

The defendant next claims that counsel was ineffective for failing to explain the nature of the charges set forth in the original information, the nature of the charges to which he was pleading guilty, the terms of the plea agreement and the consequences of pleading guilty. Rodriguez testified, however, that he had explained to the defendant those things that the defendant now claims were left unexplained, and, as it was entitled to do, the court plainly credited that testimony in concluding that Rodriguez had provided effective representation. "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The [trial] judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007). Moreover, the defendant failed to seek articulation of the court's judgment. See Practice Book § 66-5. Accordingly, we conclude that the court properly denied the defendant's motion to withdraw his pleas on the ground of ineffective representation of counsel.

The judgments are affirmed.

In this opinion DiPENTIMA, J., concurred.

FLYNN, C. J., dissenting. Taken together, Practice Book §§ 39-26[1] and 39-27[2] require that a defendant shall

[1] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed.

[2] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his . . . plea of guilty after acceptance are as follows:

be permitted to withdraw a plea of guilty or nolo contendere before sentencing on the basis of the court's failure to comply with Practice Book § 39-19.[3] The provisions of § 39-19 are "mandatory when challenged on direct appeal." (Internal quotation marks omitted.) *State* v. *Garigali*, 20 Conn. App. 810, 811, 567 A.2d 851 (1987); *State* v. *Loyd*, 8 Conn. App. 491, 494B, 540 A.2d 1058 (1986), cert. denied, 203 Conn. 801, 522 A.2d 293 (1987); see also *State* v. *Velez*, 30 Conn. App. 9, 21–22, 618 A.2d 1362, cert. denied, 225 Conn. 907, 621 A.2d 289 (1993); *State* v. *Patterson*, 14 Conn. App. 159, 161, 540 A.2d 703, cert. denied, 208 Conn. 813, 546 A.2d 281 (1988); cf. *D'Amico* v. *Manson*, 193 Conn. 144, 156–57, 476 A.2d 543 (1984) (error that requires relief on appeal does not necessarily require relief in habeas corpus proceeding). "After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [Practice Book § 39-27]." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 49, 751 A.2d 298 (2000).

---

"(1) The plea was accepted without substantial compliance with Section 39-19 . . . ."

[3] On March 27, 2006, pursuant to a plea agreement, the defendant pleaded guilty under the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to one count of risk of injury to a child and one count of sexual assault in the third degree on each of two informations, which pleas the court accepted after finding that they were made in a knowing, voluntary and intelligent manner. On May 26, 2006, the defendant made an oral motion to remove his plea counsel and to withdraw his guilty pleas. The court granted the defendant's motion for new counsel and continued the matter to allow new counsel to pursue the defendant's motion to withdraw his pleas. By motion, dated August 11, 2006, the defendant again sought to withdraw his guilty pleas on the basis of an improper and confusing plea canvass and ineffective assistance of plea counsel. The defendant alleged that the court, inter alia, violated Practice Book §§ 39-19, 39-20, 39-26 and 39-27. After a September 8, 2006 hearing, the court denied the defendant's motion to withdraw his pleas. At sentencing, on September 22, 2006, the defendant requested that the court reconsider its ruling denying his motion to withdraw his guilty pleas. The court granted reconsideration but, again, denied the motion and sentenced the defendant to a total effective term of fifteen years incarceration, execution suspended after seven years, with fifteen years probation. Accordingly, there is no question that this claim was preserved properly.

I agree with the defendant that in this case, the court failed to comply with § 39-19 in that it never told the defendant the maximum possible sentence on each charge to which he was pleading guilty, and that this failure, which clearly was brought to the trial court's attention in the defendant's motions to withdraw his pleas and for reconsideration filed before sentencing, rendered the court's plea canvass defective.[4] It is my opinion that the court was required to grant the defendant's motion to withdraw his pleas. Accordingly, I respectfully dissent.

Although the majority also concludes that the court must ensure that the defendant fully understands the maximum possible penalty on each individual charge before accepting a plea of guilty or nolo contendere, I think that it is imperative to provide additional analysis on this issue. Section 39-19 of the Practice Book provides: "The judicial authority shall not accept *the plea* without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of *the charge* to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute *for the particular offense* does not permit the sentence to be suspended;

"(4) *The maximum possible sentence on the charge*, including, if there are several charges, the maximum sentence possible from consecutive sentences and

---

[4] The court also failed to ask the defendant at the plea canvass if his attorney had gone over these items with him. Rather, the court merely asked the defendant if he had talked to his attorney about the case, to which the defendant replied, "Today." Additionally, to further complicate matters, the court on more than one occasion told the defendant that he faced a maximum sentence of twenty to twenty-five years, with a ten year mandatory minimum sentence, and a fine of $10,000 on each charge of sexual assault in the first degree, crimes to which the defendant was not offering guilty pleas.

including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself." (Emphasis added.)

"The *Boykin* [v. *Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . Those rules provide that the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the items enumerated in § 39-19, and that the plea is made voluntarily pursuant to § 39-20. There is no requirement, however, that the defendant be advised of every possible consequence of such a plea. . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, *the direct consequences of a defendant's plea include only* [1] the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; [2] the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; [3] the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and [4] the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)] . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 201–202, 842 A.2d 567 (2004),

quoting *State* v. *Andrews*, 253 Conn. 497, 504–505, 752 A.2d 49 (2000).

Specifically, on Practice Book § 39-19 (4), formerly § 711 (4), our Supreme Court has explained that its stated requirements are "both *clearly crucial* . . . and an *essential factor* . . . to an accused's grave decision whether to plead guilty to *any* charged offense." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *James*, 197 Conn. 358, 364, 497 A.2d 402 (1985). "Our Supreme Court has stated that once entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion . . . and that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . Those statements . . . apply [however] only to the withdrawal of pleas [that] are valid in the first instance. . . . Before the imposition of a sentence, the trial court *is required* to permit the withdrawal of a plea of guilty upon proof of any of the grounds set forth in Practice Book § 721 [now § 39-27]. . . . One of [the grounds set forth in Practice Book § 39-27] is that [t]he plea was accepted without substantial compliance with [Practice Book] § 711 [now § 39-19]." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Bowden*, 53 Conn. App. 243, 247–48, 729 A.2d 795 (1999); see *State* v. *James*, supra, 361–63.

In *State* v. *James*, supra, 197 Conn. 358, our Supreme Court explained: "The rules of statutory construction apply with equal force to Practice Book rules. . . . Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. . . . The requirements of the rule [§ 711, now § 39-19] are clear. We do not mandate that a trial court, in making the determinations required by § 711, speak in the very words of that rule

because [m]atters of reality, and not mere ritual, should be controlling. . . . In discharging its obligations under § 711, the court's inquiries need not be so restricted that the [j]udge [must] mount the bench with a script in his hand . . . and although not a script, perhaps, but [with] some sort of checklist, as a prompter, so that whatever form the dialogue takes, all of the necessary lines will be delivered. . . . Unfortunately, all the necessary lines required by § 711 were not delivered so as to make for conformity with the rule. It matters not that § 711 incorporates nonconstitutional as well as constitutional rights; *the rule requires both be addressed.* There was not on this record, as the state suggests, substantial compliance with § 711 because of *the trial court's failure to address § 711 (4) at all.*" (Citations omitted; emphasis added.) Id., 363–64. After so concluding, the Supreme Court in *James* then set aside the judgment of conviction and remanded the case with direction to the trial court to allow the defendant to withdraw his plea because the court had failed to inform the defendant of the maximum possible penalty on the charged crime.[5] See id., 364, 366.

[5] In *State* v. *Ocasio,* 253 Conn. 375, 378–79, 751 A.2d 825 (2000), a per curiam opinion from our Supreme Court, the court explained that it repeatedly had held that "Practice Book § 39-19 requires only substantial compliance," citing four of its prior cases. A review of those cases demonstrates that in three of them, the direct consequence issues of Practice Book § 39-19 were not preserved properly before the imposition of sentencing. See *State* v. *Domian,* 235 Conn. 679, 685, 668 A.2d 1333 (1996) ("defendant did not move to withdraw his guilty plea prior to sentencing, electing instead to raise the issue of the defective plea canvass for the first time on appeal"); *State* v. *Badgett,* 200 Conn. 412, 416, 512 A.2d 160 ("neither the Practice Book violations nor the constitutional claims were raised by the defendant by a motion to withdraw his plea before sentence was imposed by the trial court"), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); *State* v. *Godek,* 182 Conn. 353, 355, 438 A.2d 114 (1980) ("[t]he defendant raised neither of his [Practice Book] claims in the court below"), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). In only one of the cases cited by the Supreme Court, *State* v. *Suggs,* 194 Conn. 223, 226, 478 A.2d 1008 (1984), did the defendant file a motion to withdraw the plea

The state in its brief relies on *State* v. *Lugo*, 61 Conn. App. 855, 863–64, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001), a case in which this court rejected a claim that the trial court was required to inform the defendant of the maximum penalty on each individual charge, concluding that there was no constitutional requirement that the court inform the defendant of the maximum possible penalty on each individual charge to which the defendant was pleading guilty. Unlike the present case, however, in *Lugo*, the defendant was seeking review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We explained in *State* v. *Velez*,

---

prior to sentencing. There is no indication in the opinion, however, as to whether the issues raised on appeal were the same grounds as those relied on in the motion to withdraw. After reviewing the plea canvass in that case, our Supreme Court held that the defendant was aware of the rights that he was waiving, and it determined that the trial court had substantially complied with the mandates of Practice Book § 711, now § 39-19, "such that none of the defendant's constitutionally protected rights [had] been infringed upon." Id., 227.

In *Ocasio*, the defendant had preserved his Practice Book § 39-20 claim by filing a motion to withdraw his plea before the imposition of sentencing on that ground. *State* v. *Ocasio*, supra, 253 Conn. 375, 377–78. A problematic aspect of the *Ocasio* case is its adoption of a substantial compliance test similar to the one set forth in *State* v. *Domian*, supra, 235 Conn. 688, a case in which the defendant's challenge to the trial court's noncompliance with Practice Book § 39-19 was not preserved properly before the trial court. See *State* v. *Ocasio*, supra, 380–81. Citing to *Domian*, the court held that "the test for substantial compliance is whether, in light of all of the circumstances, the trial court's literal compliance with § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." Id., 380. The reason I find this problematic is that the substantial compliance test enunciated in *Domian*, namely, whether accurate information in accordance with § 39-19 would have made any difference in the defendant's decision to plead guilty or nolo contendere, was set forth in a case in which the issue of noncompliance had not been preserved before the trial court; it was raised for the first time on appeal. See *State* v. *Domian*, supra, 685. I consider this a crucial factor in light of the precedent cited throughout this dissent. Nevertheless, *Ocasio*, in substance, dealt with Practice Book § 39-20 and, while problematic in some aspects, is distinguishable from the present case because there was no issue concerning § 39-19 raised in the case.

supra, 30 Conn. App. 21–22, however, that although "the trial court's . . . compliance with the provisions of Practice Book § 711 [now § 39-19] may be mandatory when challenged on direct appeal, that may not be the case when claimed under the [doctrine of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *Golding*], where the claim of noncompliance must be of constitutional magnitude." Id. Practice Book § 39-19 embodies both constitutional and nonconstitutional elements. Both categories of elements of which are mandatory when challenged on direct appeal after properly raising the issue before the imposition of sentencing by the trial court. See *State* v. *James*, supra, 197 Conn. 358 (Practice Book § 39-19 "incorporates nonconstitutional as well as constitutional rights; the rule requires that both be addressed").

Although our Supreme Court was very clear in both *State* v. *Andrews*, supra, 253 Conn. 504–505, and *State* v. *Faraday*, supra, 268 Conn. 201–202, that there were four direct consequences of a plea of guilty or nolo contendere, namely, (1) "the mandatory minimum and maximum possible sentences," (2) "the maximum possible consecutive sentence," (3) "the possibility of additional punishment imposed because of previous conviction(s)" and (4) "the fact that the particular offense does not permit a sentence to be suspended"; (internal quotation marks omitted) *State* v. *Andrews*, supra, 505; see also *State* v. *Faraday*, supra, 202; I am keenly aware that our case law indicates that some of these direct consequences may not be constitutional in nature. Nevertheless, even if these direct consequences are not necessarily constitutional in nature, they still are mandatory when properly raised before the trial court prior to sentencing, which also preserves the issue for direct appeal. See *State* v. *James*, supra, 197 Conn. 364 (Practice Book § 39-19 "incorporates nonconstitutional as well as constitutional rights; the rule requires both be addressed"); *State* v. *Bowden*, supra, 53 Conn. App. 252 ("review of the trial court's denial of [the

defendant's] motion is not restricted by the limitations imposed by *Golding*" because defendant's claim properly was preserved in motion to withdraw plea and on direct appeal).

If the mandates of § 39-19 and *Boykin* are to be followed, the strength of the case against a defendant and the maximum possible penalty must be evaluated with respect to each charge to which a defendant is pleading. It is easy to imagine a defendant who has three charges pending against him—one class A felony that carries a maximum possible sentence of sixty years incarceration and two class D felonies that each carry a maximum possible sentence of five years incarceration. The defendant might believe that the state could prove the less serious charges but that it could not prove the more serious charge. If the defendant merely was told that the maximum possible consecutive sentence he faced on all charges was seventy years, the defendant certainly might opt for a plea agreement of twenty years rather than face a trial. If, however, the defendant was told of each maximum possible penalty, as is required by the plain language of § 39-19 (4), he might opt to go to trial fully believing, perhaps because of his actual innocence on the more serious charge, that the state could not prove the class A felony and that if found guilty by the jury on the class D charges, he would face a maximum possible sentence of only ten years. If a defendant does not know the maximum penalty on each individual charge, how can he possibly fully evaluate his options and be fully informed of the direct consequences of his pleas?

When informing a defendant of the nature of the charge to which the plea is offered, as required by Practice Book § 39-19 (1), the court does not give a general description of all the charges at once, lumped together without distinguishing one charge from the other. This is because the defendant is entitled to have each charge explained before he enters a plea on that

particular charge; the same holds true with respect to each maximum penalty. It appears to me that this is the rationale behind *Boykin, James* and the cases that followed them. To conclude otherwise would leave a defendant sadly in the dark as to the direct consequences of each plea of guilty or nolo contendere.

This rationale is buttressed by a review of federal decisions. "In *Blue* v. *Robinson*, 173 Conn. 360, 377 A.2d 1108 (1977), [our] Supreme Court concluded that the predecessor of Practice Book § 711 [now § 39-19] was drafted 'in response to the holding in the *Boykin* [v. *Alabama*, supra, 395 U.S. 238] case and to assure a sufficient record.' " L. Orland & D. Borden, 4 Connecticut Practice Series: Criminal Procedure (3d Ed. 1999) § 39-19, comments, p. 163. In *Anonymous* v. *Warden (1980-4)*, 36 Conn. Sup. 168, 176–78, 415 A.2d 764 (1980), Judge Bieluch embarked on an extensive discussion on the significance of § 711 (now § 39-19) and explained the origins of the rule: "The provisions of Practice Book, 1978, § 711 were modeled after the requirements previously established for the federal district courts by rule 11 (c) of the Federal Rules of Criminal Procedure, effective December 1, 1975."[6] *Anonymous* v. *Warden (1980-4)*, supra, 176.

---

[6] The 1975 amendments to the Federal Rules of Criminal Procedure were quite substantial. The 1975 version of rule 11 (c) provided in relevant part: "Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . ." Fed. R. Crim. P. 11 (1975).

"Prior to its amendment in 1975, Rule 11 required only that a judge determine that a defendant's plea was made with an understanding of its 'consequences.' . . . If Rule 11's requirements are not met, the defendant must be given the opportunity to plead anew. . . . [The pre-1975 version of rule 11, did] not require explanation of the possibility of consecutive sentencing [because] the court's power to impose consecutive sentences is explained implicitly 'in the separate explanation of the possible sentences on each count.' . . . This reasoning is equally persuasive under the amended rule. Although at first glance the Notes of the Advisory Committee on 1975

"Rule 11 establishes guidelines to ensure that a guilty plea is made knowingly and voluntarily. To ensure that a plea is made knowingly, a judge must address the

Amendments to the Federal Rules of Criminal Procedure appear to suggest a contrary conclusion, they do not. They indicate that the objective of the 1975 amendments was to insure that a defendant knows the maximum sentence a judge may impose. Notes of the Advisory Committee on 1975 Amendments to Rules, Fed. R. Crim. P. 11, reprinted in 8 Moore's Federal Practice ¶ 11.01[4] at 11-7 to 11-18 (1977) (hereinafter 1975 Committee Notes). The 1975 Committee Notes, however, interpreted the rule as promulgated by the Supreme Court, prior to its alteration in Congress. The rule as originally proposed required disclosure of the 'maximum possible penalty provided by law for the offense to which the plea is offered.' . . . The proposed rule thus reaffirmed the proposition that a defendant need be specifically advised of possible sentences only with respect to each offense. The 1975 Committee Notes suggest that because the penalty for an offense appears on the face of the statute defining the crime, a judge can ascertain exactly what to tell a defendant: 'Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.' . . . In Congress the proposed rule generated controversy for its failure to enumerate important rights that are waived by offering a plea of guilty. Those were enumerated by *Boykin* v. *Alabama*, [supra, 395 U.S. 238]. When the House Judiciary Committee reported the measure which became Rule 11, the rule had been modified to include a requirement that a defendant be advised of the rights waived by a plea and the phrase, 'for the offense to which the plea is offered,' was deleted from the section regarding advice about potential penalties. See H.R. Rep. No. 247, 94th Cong., 1st Sess. 21 (1975), reprinted in [1975] U.S. Code Cong. & Admin. News, p. 674, 693. It appears that clearer explanation of the rights discussed in *Boykin* v. *Alabama*, supra, was the purpose of the committee's revisions. We think that the accompanying deletion was merely a technical amendment to the rule's text rather than an intentional enlargement of the judge's duty to inform. Although one could argue that Congress, in deleting the phrase, intended to require disclosure of the possibility of consecutive sentences, in the absence of an indication of such intent, we think amended Rule 11 was meant merely to simplify a judge's task by emphasizing that the crucial consequences of entering a plea which must be explained to a defendant are the sentencing consequences, rather than other, less direct, implications of entering a guilty plea." (Citations omitted.) *United States* v. *Hamilton*, 568 F.2d 1302, 1304–1305 (9th Cir.), cert. denied, 436 U.S. 944, 98 S. Ct. 2846, 56 L. Ed. 2d 785 (1978).

Although rule 11 (c) textually has changed since its major revisions in 1975, those changes substantially have been stylistic. The advisory committee to the 2002 amendments explained that rule 11 (c) remained substantially unchanged until the 2002 revision that "amended and reorganized [the rule] as part of the general restyling of the Criminal Rules to make them more

defendant in open court to establish that the defendant understands (1) the nature of *the charge*; (2) the mandatory minimum and maximum sentences for *the charge*, including any special parole, supervised release, and restitution terms; (3) the constitutional rights waived by a guilty plea; and (4) that answers to the court's questions, if under oath, on the record, and in the presence of defendant's counsel, may be used against him or her in a subsequent proceeding. The court need not, however, inform the defendant of any collateral consequences of pleading." (Emphasis added.) "Annual Review of Criminal Procedure," 90 Geo. L.J. 1087, 1498–1504 (2002).

·"Rule 11 directs the district court to inform the defendant of, and determine that the defendant understands, 'the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . .' Fed. R. Crim. P. 11 (c). Rule 11 (c) by its terms does not contemplate overlap of the counts, but rather speaks in terms of individual 'charge[s] to which plea[s] [are] offered.' Thus, a plain reading of Rule 11 requires the district court to inform the defendant of the nature of the charge to which the defendant is pleading, any mandatory minimum penalty, and the maximum possible penalty applicable to *each count* to which the defendant is pleading guilty." (Emphasis added.) *United States* v. *Still*, 102 F.3d 118, 123 (5th Cir. 1996), cert. denied, 522 U.S. 806, 118 S. Ct. 43, 139 L. Ed. 2d 10 (1997); but see *United States* v. *Ammirato*, 670 F.2d 552, 555 (5th Cir. 1982) (finding no merit to *unpreserved claim* that plea was involuntary because

easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except [in a few instances where the changes are more substantive]." U.S.C.S, Court Rules, Fed. R. Crim. P. 11, Notes of the Advisory Committee on the 2002 Amendments (Lexis Cum. Sup. 2008) p. 77.

court failed to give defendant count by count break-down of maximum possible penalties).

In *United States* v. *Wetterlin*, 583 F.2d 346, 353 (7th Cir. 1978), cert. denied, 439 U.S. 1127, 99 S. Ct. 1044, 59 L. Ed. 2d 88 (1979), the United States Court of Appeals for the Seventh Circuit explained: "It should be obvious that when a defendant pleads guilty to more than one charge at a plea hearing Rule 11 does not require the district judge to repeat all the advice speci-fied in Rule 11 (c) before taking the plea *on each charge*. However, in order for the rule to accomplish its intended purpose it is essential for the district judge to inform the defendant of and determine that he under-stands *the nature of each particular charge and the maximum possible penalty as to that charge*, i.e., he should comply with Rule 11 (c) (1) *as to each individual charge* for which a plea of guilty is offered." (Empha-sis added.)

Additionally, a review of other states with rules of practice similar to § 39-19 reveals that they also require the court, when accepting pleas of guilty or nolo conten-dere, to ensure that the defendant understands the nature of each charge and the maximum penalty associ-ated therewith, in addition to the maximum possible consecutive sentence when there are multiple charges. These states also consider this information to be manda-tory, and, when the failure to inform on each of these direct consequences is raised via a motion to withdraw a plea before the trial court imposes sentencing, the withdrawal must be permitted. See, e.g., *Wells* v. *State*, 396 A.2d 161, 162 (Del. 1978) (holding that "[t]he maxi-mum possible sentence provided by law for conviction of the offense charged is the most important conse-quence of the plea" [internal quotation marks omitted]); *People* v. *Flannigan*, 131 Ill. App. 2d 1059, 1064–65, 267 N.E.2d 739 (1971) ("[w]here a defendant is charged with more than one crime, the manner in which he may

have to serve the sentences imposed for those crimes, whether consecutively or concurrently, is obviously a consequence of his plea, and must be considered *as crucial to his decision as the admonition on the maximum penalty for each of the charges*" [emphasis added]); *Commonwealth* v. *Stark*, 698 A.2d 1327, 1330 (Pa. Super. 1997) (defendant "must be advised of the maximum sentence for *each individual offense* for which he is pleading guilty, [and] also must be advised that those sentences may be imposed *consecutively*" [emphasis in original]), citing *Commonwealth* v. *Persinger*, 532 Pa. 317, 320–22, 615 A.2d 1305 (1992).

In *State* v. *Weyrich*, 163 Wn. 2d 554, 557, 182 P.3d 965 (2008), a recent en banc panel of the Washington Supreme Court, after granting certification to appeal from the decision of its Appellate Court, reversed the judgment of that court, holding that "[a] defendant must be informed of the statutory maximum for a charged crime, as this is a direct consequence of his guilty plea." In *Weyrich*, the defendant had been misinformed as to the maximum penalty for one of charged crimes. Id., 556. The state had argued that because the court sentenced the defendant within the correct range as contemplated by the plea agreement, the misstatement as to the maximum sentence on one of the counts "had no actual bearing on the plea." Id. The Supreme Court explained that because the defendant "did not waive the error but timely moved to withdraw his pleas before sentencing"; id., 557; the error could not be harmless.

Reviewing this case law, I cannot agree with the majority's opinion that although the trial court "accepted the defendant's pleas without first determining whether he was aware of and understood the maximum possible sentence to which he was exposed for each charge," there was substantial compliance with § 39-19 (4) because of some statements made by the

defendant's plea attorney during the hearing on the defendant's ineffective assistance of counsel claim.

The transcripts clearly reveal that the court failed to inform the defendant of the maximum possible penalty on any of the crimes to which the defendant was pleading guilty. The transcript does reveal, however, that the court twice discussed the maximum possible penalty for charges of sexual assault in the first degree, charges to which the defendant was not pleading guilty. Also, there is no indication in the plea canvass that the defendant's counsel ever discussed the maximum possible penalty on each charge with the defendant, nor does the majority cite anything in the record that would convince me otherwise.[7] The defendant in this case was

---

[7] The majority cites to portions of the hearing on the defendant's claim of ineffective assistance of counsel to support its conclusion that the defendant was aware of the maximum penalty on each charge at the time he pleaded guilty. The court, however, made its ruling as to the defendant's claim of a defective canvass on the basis of the transcript of the plea canvass alone, before the hearing on the claim of ineffective assistance. At the beginning of the hearing, the court stated: "I recall the canvass as if it was five minutes ago. I recall [the defendant] saying he did not do it. I recall [the defendant] breaking down in tears. I recall my taking a recess to allow [the defendant] to compose himself. I recall bringing him back a second time and saying, 'are you sure that you want to do this?' So . . . based upon the motion to withdraw for defective canvass, that portion of the motion is denied; you have an exception to that. Now, you can pursue your ineffective assistance [claim]." Even if this were not the case, however, I find nothing in that hearing that demonstrates substantial compliance with § 39-19 during the plea canvass or that demonstrates that the defendant was aware of the maximum possible penalties for each charge to which he was pleading guilty. As the majority notes, the defendant's attorney informed him that he was "facing charges of sexual assault in the first degree" and told him what penalties were associated therewith. The attorney also told him "what the plea offer entailed . . . ." This information in no way explained the maximum possible penalty on each charge to which the defendant was pleading guilty, nor did it ensure his full understanding of those possibilities as is required under § 39-19 (4). Further, the defendant's statement that he remembered the judge telling him the maximum penalties he could receive if convicted also does not speak to the individual charges and the individual penalties associated therewith. We know from our review of the plea canvass that the court did not tell the defendant the maximum penalty on any charge to which he was pleading guilty.

left ill-advised and uninformed as to one of the direct consequences of each plea of guilty that he entered. This deficiency was further compounded by the court repeatedly informing the defendant of the maximum possible penalty for crimes to which he was not pleading guilty, namely, sexual assault in the first degree. The defendant, having fully preserved this issue by filing a motion to withdraw before the court imposed his sentence, should have been permitted to withdraw his pleas. Accordingly, I respectfully dissent.